IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AMERICAN TALENT AGENCY, INC.,

*Plaintiff,*

Case No.: 08 CV. 4541 (SCR)

v.

ROWE ENTERTAINMENT, INC., LEONARD ROWE,
N&D ENTERTAINMENT, INC., NEAL WILSON and
DESHANNA WILSON,

*Defendants.*
-------------------------------------------------------------------x

I, **BRIAN A. BLOOM**, hereby declare the following under the penalty of perjury:

1.    I am associated with the law firm of Akerman Senterfitt LLP, counsel to Defendants N&D Entertainment, Neal Wilson, and Deshanna Wilson (collectively, the "Wilson Parties") in the above-captioned action.

2.    I am familiar with the proceedings in this case. I make this declaration based on the Wilson Parties' motion to dismiss the instant action or *in the alternative* to transfer the instant proceeding to the United States District Court for the Middle District of Georgia.

3.    Attached as Exhibits hereto are true and accurate copies of the following:

Exhibit "A":    Complaint for Damages; *Emory Alexander, et al. v. Rowe Entertainment, et al.*, Civil Action Number: SU08CV1534-05, Superior Court of Muscogee County, State of Georgia;

Exhibit "B":    Affidavit of Deshanna Wilson, dated May 23, 2008 in support of the Wilson Defendants' motion;

Exhibit "C":    Letter to Ira Scot Meyerowitz, dated May 27, 2008, confirming the briefing scheduling.

{NY032082;1}

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        May 28, 2008

_____
        Brian A. Bloom

335 Madison Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 880-3800
Facsimile: (212) 880-8965

# Exhibit  A

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

Emory Alexander; Eric Sneed;                    )
Deshanna and Neal Wilson;                       )
George Rowell; Mark Hubbard                      )
Keenan McCardell; Ricardo Cruz and              )          CIVIL ACTION NUMBER:
David P. Klem; and Dion Young                    )
                                                )
        Plaintiffs,                             )
                                                )          SU08CVI534-05
vs.                                             )
                                                )
Rowe Entertainment, Inc.; Leonard Rowe,         )
Individually; American Talent Agency, Inc.;     )
Peter Seitz, Individually; William Sims,        )
a/k/a "Tankie" and Wanda Jordan - Fields         )
                                                )
        Defendants.                             )



## COMPLAINT FOR DAMAGES

COMES NOW Plaintiffs and file this Complaint for Damages and show the Court

as follows:

### I.    PARTIES, JURISDICTION AND VENUE

1.

Defendant Rowe Entertainment, Inc. ("Rowe Entertainment") is a Georgia

Corporation that transacts business in Muscogee County, Georgia by virtue of

fraudulently inducing Plaintiff "Alexander", "Rowell" and "Wilsons" to enter a contract

within Muscogee County for a concert show which was in fact performed in Muscogee

County. Based on information and belief, Rowe Entertainment, Inc. has abandoned its

registered offices in the State of Georgia, and will have to be served by delivery of

process to its owner and agent, Leonard Rowe.

2.

Defendant American Talent Agency, Inc. ("American") is a New York Corporation, foreign to the state of Georgia, that transacts business in Muscogee County, Georgia by virtue of fraudulently inducing PlaintiffS "Alexander", "Rowell" and "Wilsons" to enter a contract within Muscogee County for a concert show which was in fact performed in Muscogee County. Defendant "Rowe" is also an agent of "American" and transacts business with, by and thru "American". Defendant "American" can be served at its registered office in the state of New York, located at 173 Main Street, Ossining, New York 10562.

3.

Defendant Leonard Rowe, the owner and principal officer for Rowe Entertainment, has abandoned the State of Georgia and no longer resides in the State of Georgia. In addition, he has transacted business in Muscogee County, Georgia by virtue of fraudulently inducing Plaintiffs "Alexander", "Rowell" and "Wilson" to enter a contract within Muscogee County and to be performed in Muscogee County.

4.

Defendant Peter Seitz, the CEO of American Talent Agency, is believed to be a resident of the State of New York. Seitz transacted business in Muscogee County personally and thru his "agent" Leonard Rowe and upon information and belief participated in the fraudulent scheme and artifice individually as well as in his corporate capacity. Defendant Seitz can be served at his place of business, 173 Main Street, Ossining, New York 10562.

5.

Defendant William Sims, aka "Tankie", ("Sims"), upon Information and belief, was an employee of Rowe Entertainment, Inc. Defendant William "Tankie" Sims served as the accountant in the fraudulent scheme and artifice and issued fraudulent "settlement sheets" to "Alexander" and the other plaintiffs. "Sims'" employer, Rowe Entertainment, has abandoned it place of business and his actual residence is unknown at this time.

6.

Defendant Wanda Jordan – Fields, ("Fields"), upon information and belief, was an employee of Rowe Entertainment, Inc. Defendant "Fields" served as the Administrative Assistant to Leonard Rowe and assisted "Rowe" and "Sims" in the fraudulent scheme and artifice and Issued fraudulent "settlement sheets" to "Alexander" and the other plaintiffs. "Field's" employer, Rowe Entertainment, has abandoned it place of business and her actual residence is unknown at this time.

7.

The Defendants in this matter are subject to the jurisdiction and venue in this Court.

8.

Plaintiffs  Emory Alexander ("Alexander") and George Rowell ("Rowell") are residents of Columbus, Muscogee County Georgia.

9.

Plaintiffs "Sneed"; "Wilson", "Hubbard", "McCardell"; "Cruz", "Klem" and "Young" are residents of states other than Georgia, but consent to the Jurisdiction of this Court.

## II.    OPERATIVE FACTS

### A. "The November 14, 2007 Columbus Show"

10.

Leonard Rowe is the owner and principal in charge of Rowe Entertainment. In early 2007, Rowe approached Plaintiff "Alexander" by traveling to Muscogee County to meet with Alexander about investing in the promotion of a music concert series that he represented to Alexander he had obtained the exclusive contractual right to promote.

11.

Defendant Rowe represented to Plaintiff Alexander that he had a contract with music artist, "R Kelly" to exclusively promote his upcoming "Double Up" tour in the United States. Defendant Rowe offered Alexander an opportunity to invest in the business opportunity from the concert tour promotional contract by purchasing an ownership interest in tour events.

12.

Unbeknownst to "Alexander" and other investors, Rowe Entertainment's contract with R. Kelly Touring, Inc specifically stated "[a]ll proposed partners to whom engagements will be sold off shall be specified in writing and submitted for approval by Kelly Management prior to any on sale advertising or announcements." Such approval was never sought or obtained by Rowe Entertainment.

13.

"Alexander" agreed to invest with Defendants to purchase an investment interest in the Columbus, Georgia concert show, as well as 4 other concerts shows in different

cities. Alexander entered into an agreement by which he obtained a 33.33% stake in the Columbus show – in return for paying advertising and other expenses that came to approximately $40,000.

14.

"Alexander" entered into the agreement with the understanding that he owned a 33.33% share of the Columbus show, that George Rowell owned a 33.33% share of the Columbus show and that Leonard Rowe owned the remaining 33.33 % share in the Columbus show.

15.

"Rowell" had the same understanding as "Alexander" as to his 33.33% share in the Columbus show, which was memorialized in a written agreement on the letterhead of American Talent Agency. In reliance on his agreement with "Rowe" and "American", Rowell caused an official cashier's check in the amount of $133,000 to be drawn from Wachovia Bank in Columbus, Georgia. Said check was delivered to Rowe.

16.

"Alexander" and "Rowell" were unaware that Deshanna Wilson and Neal Wilson, (herein after "Wilsons"), had a 50% interest in the Columbus show.

17.

Based on this arrangement, "Rowe" and "American" sold their investors 116% of the Columbus show. Said arrangement was fraudulent and a breach of contract with "Alexander", "Rowell" and "Wilsons".

18.

"American" was in partnership, de facto and de jure, with Rowe Entertainment in the concert tour venture for R Kelly, including the Columbus tour show.

19.

Immediately after the Columbus show, Defendant "Rowe", "Sims" and "Fields" met with "Alexander" and "Rowell" and indicated the revenue and expenses for the event.

20.

Defendants indicated thru settlement sheets that the Columbus show had in fact lost money – in that "Alexander's", "Rowell's" and "Wilsons'" percentage of the investment had not been recouped thru the proceeds generated by the concert.

21.

After Defendants represented that no monies were due to "Alexander" for the Columbus show in which he had invested, "Alexander" learned that Defendants had provided false and fraudulent information which had induced "Alexander" to continue his investment in four more tour events.

22.

"Alexander" subsequently learned that Defendants' promotional contract with R Kelly prohibited Defendants from selling financial interests to investors like "Alexander". Defendants concealed this information from "Alexander" and from R Kelly.

23.

"Alexander" subsequently learned that Defendants had sold investment interests to other persons, including some of the other Plaintiffs in this action, in R Kelly tour

events, and in many instances, Defendants had sold Investment interests totaling more than 100% in tour events.

24.

'Alexander" subsequently learned that Defendants had misrepresented the profits made from the R Kelly tour events that he had invested in. The settlement statements that were provided by Defendants were false and bogus documents designed to further induce "Alexander" to invest in additional R Kelly tour events.

25.

"Alexander" subsequently learned that Defendants had not fully paid R Kelly despite representing to "Alexander" that some events had not been profitable due to the large amounts of money paid to R Kelly. Kelly has now filed an arbitration grievance against Rowe Entertainment in which he alleges to be owed approximately $3,000,000.

26.

"Alexander" subsequently learned that the same misrepresentations of material information and suppression of material information had been practiced upon other individuals, many of whom are Plaintiffs in this action.

### B. " Fraud extending to all Plaintiffs"

27.

Plaintiff "Alexander" also invested with Rowe Entertainment and American Talent Agency, Inc. in R. Kelly tour dates in Baltimore (50% interest), Washington, DC (50% interest), Kansas City, MO (50% interest) and Indianapolis, IN (50% interest). All Defendants participated in a similar fraud to the one perpetrated in Columbus, Georgia against "Alexander" by selling said tour dates to "Alexander", selling more than 100% of

the tour dates to Investors Including "Alexander" and Issulng false and misleading settlement statements to "Alexander" for sald tour dates. In total, Alexander invested approximately $310,000 with Rowe and Amerlcan.

28.

Plaintiff Eric Sneed ("Sneed") invested with Rowe Entertainment and Amerlcan Talent Agency, Inc. in R. Kelly tour dates In Dallas, TX (50% interest), Miami, FL (25% interest), Sacramento (25% Interest) and Oakland (25% interest). In addition, "Sneed" invested in tow show dates that cancelled and did not play. All Defendants participated In a similar fraud to the one perpetrated In Columbus, Georgia against "Sneed" by sellIng said tour dates to "Sneed", selling more than 100% of the tour dates to investors including "Sneed" and Issuing false and misleading settlement statements to "Sneed" for sald tour dates. In total, Sneed invested approximately $312,500 with "Rowe" and "American".

29.

Plaintiffs Deshanna Wilson and Neal Wilson ("Wilsons") invested with Rowe Entertalnment and American Talent Agency, Inc. in all of the R. Kelly tour dates. The "Wilsons" reached an agreement with "Rowe" that they would be a 50% partner in all show dates, except that 10 show dates were being sold to a "football player", later Identifled as Plaintiff "McCardell". In those 10 shows, the "Wilsons" understood themselves to be 25% partners, with Rowe having 25% and "McCardell" having 50%. All Defendants participated in a similar fraud to the one perpetrated In Columbus, Georgia against the "Wilsons" by selling said tour dates to "Wilsons", selling more than 100% of the tour dates to Investors including the "Wilsons" and issuing false and

misleading settlement statements to the "Wilsons" for said tour dates. In total, the "Wilsons" invested approximately $400,000 with Rowe and American.

30.

Plaintiff George Rowell ("Rowell"), in addition to the Columbus tour date listed above, invested with "Rowe" and "American" in R. Kelly tour dates in Dallas, TX (50% interest) and Miami, FL (50% interest). All Defendants participated in a similar fraud to the one perpetrated in Columbus, Georgia against "Rowell" by selling said tour dates to "Rowell", selling more than 100% of the tour dates to investors including "Rowell" and issuing false and misleading settlement statements to "Rowell" for said tour dates. In total, Rowell invested approximately $258,000 with "Rowe" and "American". Finally, Rowell is owed $25,000 for funds he invested in an R Kelly "after party" that never transpired.

31.

Plaintiff Keenan McCardell ("McCardell") invested with Rowe Entertainment and American Talent Agency, Inc. in R. Kelly tour dates for Birmingham, AL (50% interest), Cleveland, Ohio (50% interest), St. Louis, MO (50% interest), Jacksonville, FL (50%), Minneapolis, MN (50% interest), Houston, TX (50% interest) and Hampton, VA (100% interest). The Minneapolis and Hampton show dates were cancelled, but the other 5 tour shows were performed. All Defendants participated in a similar fraud to the one perpetrated in Columbus, Georgia against "McCardell" by selling said tour dates to "McCardell", selling more than 100% of the tour dates to investors including "McCardell" and issuing false and misleading settlement statements to "McCardell" for said tour

dates. In total, McCardell invested approximately $792,500 with "Rowe" and "American".

32.

Plaintiff Mark Hubbard ("Hubbard") invested with Rowe Entertainment and American Talent Agency, Inc. in R. Kelly tour dates in Charlotte, NC (25% interest), Birmingham, AL (50% interest), Philadelphia, PA (50% interest) and Greenville, SC (50% interest). All Defendants participated in a similar fraud to the one perpetrated in Columbus, Georgia against "Hubbard" by selling said tour dates to "Hubbard", selling more than 100% of the tour dates to investors including "Hubbard" and issuing false and misleading settlement statements to "Hubbard" for said tour dates. In total, Hubbard invested approximately $340,000 with "Rowe" and "American".

33.

Plaintiffs Ricardo Cruz ("Cruz") and David P. Klem ("Klem") invested with Rowe Entertainment and American Talent Agency, Inc. in R. Kelly tour dates in Louisville, KY (50% interest) and Philadelphia, PA (50% interest). All Defendants participated in a similar fraud to the one perpetrated in Columbus, Georgia against "Cruz" and "Klem" by selling said tour dates to "Cruz" and "Klem", selling more than 100% of the tour dates to investors including "Cruz" and "Klem" and issuing false and misleading settlement statements to "Cruz" and "Klem" for said tour dates. In total, "Cruz" and "Klem" invested approximately $250,000 with "Rowe" and "American".

34.

Plaintiff Dion Young ("Young") invested with Rowe Entertainment and American Talent Agency, Inc. in R. Kelly tour dates in Charlotte, NC (50% interest) and St. Louis,

MO (50% interest). All Defendants participated in a similar fraud to the one perpetrated in Columbus, Georgia against "Young" by selling said tour dates to "Young", selling more than 100% of the tour dates to investors including "Young" and issuing false and misleading settlement statements to "Young" for said tour dates. In total, "Young" invested approximately $171,600 with "Rowe" and "American".

## C. DOCUMENTED CONCERT SHOWS IN WHICH THESE PLAINTIFFS WERE SOLD OVER A 100% INVESTMENT

### 35.

Defendants intentionally breached their contracts and committed willful frauds upon Plaintiff's "McCardell", "Wilsons" and "Hubbard" as it relates to the **Birmingham** concert. Specifically McCardell owned 50% of this date, "Hubbard" owned 50% and "Wilsons" owned 25%. Thus, defendants, at a minimum, sold a 125% investment in the Birmingham concert date.

### 36.

Defendants intentionally breached their contracts and committed willful frauds upon Plaintiff's "Wilsons", "Hubbard" and "Young" as it relates to the **Charlotte, NC** concert. Specifically "Wilson" owned 50% of this date, "Hubbard" owned 25% and "Young" owned 50%. Thus, defendants, at a minimum, sold a 125% investment in the Charlotte, NC concert date.

### 37.

Defendants intentionally breached their contracts and committed willful frauds upon Plaintiff's "Wilsons", "Hubbard" and "Cruz" and "Kiem" as it relates to the **Philadelphia, PA** concert. Specifically "Wilson" owned 50% of this date, "Hubbard"

owned 50% and "Cruz" and "Klem" owned 50%. Thus, defendants, at a minimum, sold a 150% investment in the Philadelphia, PA concert date.

38.

Defendants intentionally breached their contracts and committed willful frauds upon Plaintiff's "Wilsons", "Rowell" and "Snead" as it relates to the Dallas, TX concert. Specifically "Wilson" owned 50% of this date, "Rowell" owned 50% and "Snead" owned 50%. Thus, defendants, at a minimum, sold a 150% investment in the Dallas, TX concert date.

39.

Defendants intentionally breached their contracts and committed willful frauds upon Plaintiff's "Wilsons", "Rowell" and "Snead" as it relates to the Miami, FL concert. Specifically "Wilson" owned 50% of this date, "Rowell" owned 50% and "Snead" owned 25%. Thus, defendants, at a minimum, sold a 125% investment in the Miami, FL concert date.

40.

Defendants intentionally breached their contracts and committed willful frauds upon Plaintiff's "Wilsons", "McCardell" and "Young" as it relates to the St. Louis, MO concert. Specifically "Wilson" owned 25% of this date, "McCardell" owned 50% and "Young" owned 50%. Thus, defendants, at a minimum, sold a 125% investment in the St. Louis, MO concert date.

### III.    COUNT ONE – INTENTIONAL BREACH OF CONTRACT

41.

Defendants breach their contracts with all Plaintiffs in numerous respects by not complying with the terms of the agreement, as further outlined in the allegations below.

42.

Plaintiffs have been harmed financially by the Defendants' failure to perform the contract.

### IV.    COUNT TWO- FRAUD IN THE INDUCEMENT

43.

Defendants fraudulently induced Plaintiffs to enter R Kelly investment contracts with Defendants based on misrepresentations, made knowingly and intentionally, for the purpose of inducing Plaintiffs to invest substantial amounts of money with Defendants.

44.

Plaintiffs relied to their detriment on the material misrepresentations made by Defendants by payment of substantial amounts of money to Defendants.

45.

The material misrepresentations more definitely set forth in the above paragraphs.

46.

Plaintiffs are entitled to recover compensatory damages for the fraud engaged in by Defendants.

### V.    COUNT THREE-FRAUDULENT CONCEALMENT

47.

Defendants fraudulently induced all Plaintiffs to enter R Kelly investment contracts with Defendants based on knowing and intentional concealment of material facts, concealed for the purpose of inducing all Plaintiffs to invest substantial amounts of money with Defendants.

48.

The concealments of material facts include not informing Plaintiffs that the contract between Defendants and R Kelly prohibited the investment contracts entered into by Alexander.

49.

The concealments of material facts include not providing accurate information about the profitability of the R Kelly Tour events, and not providing accurate information about the participation of other investors in the various R Kelly tour events.

50.

Plaintiffs are entitled to recover compensatory damages for the fraudulent concealment engaged in by Defendants.

### VI.    COUNT FOUR-RICO VIOLATIONS

51.

Defendants have violated the Georgia Rico Statute, O.C.G.A. §16-14-1 et. seq. by engaging in intentional criminal acts causing harm to Plaintiffs, including mail and wire fraud and state law theft by deception in the furtherance of an illegal and criminal enterprise.

52.

Defendants are liable to Plaintiffs for the compensatory damages sustained by Plaintiffs.

53.

Defendants are liable to Plaintiffs for all damages provided for by the Georgia Statute, including treble damages, punitive damages and attorney fees.

V.    COUNT FIVE-PUNITIVE DAMAGES

54.

Defendants have engaged in a deliberate and intentional pattern and practice of fraudulent and illegal conduct for the purpose of defrauding Plaintiffs of their money, and as such have evidenced clear and convincing fraudulent practices made repeatedly upon numerous individuals as set forth more definitively in this complaint.

55.

Plaintiffs are entitled to recover punitive damages for the conduct of Defendants in the transactions identified in this complaint.

VI.    COUNT SIX-OTHER PLAINTIFFS SIMILARLY DEFRAUDED

56.

The other six Plaintiffs, other than Alexander, Rowell and Wilsons were victims of a pattern and practice of illegal conduct, the same conduct as alleged to have been practiced upon Alexander, Rowell and Wilson in the Columbus show.

57.

Each of these Plaintiffs were illegally induced to invest money with Defendants for investment interest in R Kelly tour venues throughout the United States through the

same illegal misrepresentations and concealments made in regards to the Columbus

show as outlined in this complaint.

58.

Each of these additional six Plaintiffs have been harmed individually by

Defendants' illegal conduct, and each has substantial financial losses that will be proven

at the trial of this case.

59.

Each of these additional six Plaintiffs are entitled to recover compensatory,

treble, punitive damages and attorney fees for the illegal conduct engage in by

Defendants that caused each Plaintiff substantial financial harm.

WHEREFORE, Plaintiffs pray as follows:

1.    That Plaintiffs' Complaint be served on all Defendants;

2.    That Plaintiffs have a trial by jury;

3.    That Plaintiffs be awarded judgment in an amount to be proved at trial

        against Defendants to include compensatory, punitive, treble damage

        and attorney fees and expenses of litigation;

4.    That all costs of this action be cast against the Defendants; and

5.    That Plaintiffs have such other and further relief as justice demands.

Respectfully submitted,

DATED this __17__ day of April, 2008.


THE MARTIN FIRM, LLP

*John T. Martin*

John Martin
Georgia Bar No: 473330
233 12th Street, Suite 809
Columbus, Georgia 31901
Telephone (706) 324-7371
Facsimile: (706) 321-9501


WALDREP, MULLIN & CALLAGHAN

*C. Morris Mullin*   w/c/p

C. Morris Mullin
Georgia Bar Number 528550
105 13th Street, Suite B
Columbus, Georgia 31902
Telephone: (706) 320-0600

*Attorneys for Plaintiffs*

# Exhibit 

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

AMERICAN TALENT AGENCY, INC.,

Case No.: 08 CV. 4541

Plaintiff,

v.

**AFFIDAVIT OF
DESHANNA WILSON**

ROWE ENTERTAINMENT, INC., LEONARD ROWE,
N&D ENTERTAINMENT, INC., NEAL WILSON and
DESHANNA WILSON,

Defendants.

-----------------------------------------------------------------x

STATE OF GEORGIA          )
                          ) SS.:
COUNTY OF RICHMOND        )

I, **DESHANNA WILSON**, being duly sworn, deposes and states as follows:

1.      I am currently married to Neal Wilson ("Neal"), and we are residents of Richmond County, Georgia with an address at 2607 National Wood, Augusta, Georgia 30904.

2.      Neal Wilson, is the principal of N&D Entertainment ("N&D").

3.      Through N&D, Neal and I work as concert promoters in the State of Georgia.

4.      In approximately May of 2007, while at home in Augusta, Georgia, Neal and I received a phone call from Mr. Peter Seitz, the CEO of American Talent Agency, Inc. who we had known since approximately 2004.

5.      During this initial phone call, Mr. Seitz told us about a possible concert series to be co-headlined by the music artists Janet Jackson and Robert Kelly p/k/a R.Kelly ("R.Kelly") (the "Concert Series"), and asked us whether we would be interested in investing in the Concert Series.

6.    Mr. Seitz told us that the Concert Series was going to be overseen by a man named Leonard Rowe, who we didn't know at that time. Mr. Seitz told us great things about Mr. Rowe, and then conferenced Mr. Rowe into our phone call.

7.    Both Mr. Seitz and Mr. Rowe made great efforts to convince us to invest in the Concert Series.

8.    Mr. Rowe initially requested that Neal and I (through N&D) invest $4,000,000.00 in the Concert Series and in return had promised us a 50/50 split of the ownership interest in the Concert Series (and in each of the individual tour events).

9.    Neal and I told Mr. Seitz and Mr. Rowe that we needed time to consider whether we would invest in the Concern Series.

10.    Over the course of the next few weeks, Mr. Rowe traveled to our home in Georgia several times trying to convince us to invest in the Concert Series. Mr. Seitz also called us almost every day trying to convince us to invest in the project. Mr. Seitz kept promising that investing in the Concert Series was going to be a great deal.

11.    As part of the "sales effort," Mr. Rowe personally delivered to Neal and me certain paperwork (projections) while we were in Augusta, Georgia, which projections purported to show how the Concert Series would generate money from the tour itself, as well as the subsequent sale of DVDs and other merchandise.

12.    Eventually, because of the persistent efforts of both Mr. Rowe and Mr. Seitz, Neal and I agreed to invest in the Concert Series, but we told Mr. Rowe we did not want to commit to a $4,000,000.00 investment.

13.    Mr. Rowe asked us how much money we could invest, and we told him we had about $150,000.00 in immediately available cash, and could probably come up with about $400,000.00 total.

14.    Mr. Rowe and Neal negotiated a contract, which provided generally, that in consideration of our financial investment in the Concert Series, Neal and I would be entitled to a fixed and identified percentage of the net profits of a portion of the Concert Series. The contract negotiation took place entirely within the State of Georgia.

15.    At no time did Neal or I agree to pay commissions of any sort to Mr. Seitz, Mr. Rowe, or American Talent Agency, Inc.

16.    None of the conversations surrounding the purposed financial investment took place in New York. Neal and I were in Georgia during each and every conversation.

17.    Mr. Rowe said he needed the $150,000.00 cash immediately, and so he came back to our house in Georgia, and together we went to the Wachovia Bank in Augusta, Georgia, where we gave Mr. Rowe $150,000.00 cash and wrote out a receipt, which we had notarized at the bank.

18.    All meetings between Neal and me and Leonard Rowe and/or Peter Seitz related to or concerning our investment in the Concert Series took place in the State of Georgia.

19.    Neither Neal nor I had any contacts with New York related to the claims asserted by American Talent Agency, Inc. and Peter Seitz in the New York Complaint.

20.    N&D Entertainment is not licensed in New York, and does not conduct business in New York.

21.    I was served with a copy of the New York Complaint at my home in Augusta, Georgia on May 5, 2008 by a process server.

I declare under the penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.

Deshanna Wilson

Sworn to before me this
23rd day of May, 2008

Notary Public

NOTARY PUBLIC-STATE OF FLORIDA
Lola Dawn Partlow
Commission # DD734670
Expires:   DEC. 12, 2011
BONDED THRU ATLANTIC BONDING CO., INC.

# Exhibit  _C_



Akerman Senterfitt LLP
ATTORNEYS AT LAW

Fort Lauderdale
Jacksonville
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

335 Madison Avenue
Suite 2600
New York, NY 10017
www.akerman.com
212 880 3800 *tel*    212 880 8965 *fax*

Brian A. Bloom
212 880 3832 *direct tel*
212 905 6409 *direct fax*
brian.bloom@akerman.com

May 27, 2008

**VIA FACSIMILE**

Ira Scot Meyerowitz, Esq.
*Attorney for Plaintiff*
347 Fifth Avenue, Suite 1300
New York, NY 10016

Re:    **American Talent Agency, Inc. v. Rowe Entertainment, Inc. et al.;**
       **Index No.: 08 CV. 4541 (S.D.N.Y.)**

       As you know, this firm represents defendants N&D Entertainment, Neal Wilson and Deshanna Wilson (collectively the "Wilson Defendants") in the above referenced action.

       As we have agreed to on the phone today, the Wilson Defendants will have until May 28, 2008 to file a motion seeking to dismiss the above-referenced action or *in the alternative* to transfer the matter to the U.S. District Court for the Middle District of Georgia (the "Motion").

       This letter is to confirm the agreed-upon briefing scheduling with respect to the Motion. Plaintiff will have until June 23, 2008 to file its opposition papers, and the Wilson Defendants shall have until July 14, 2008 to serve and file its reply papers. If this schedule does not comport with our agreement, or if you have any other questions or concerns, please feel free to contact me.

                                   Sincerely yours,

                                   AKERMAN SENTERFITT LLP

                                   Brian A. Bloom

{NY032107;1}